## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| CRYSTAL STAUFFER,<br><br>      Plaintiff,<br><br>    v.<br><br>NAVIENT SOLUTIONS, INC.,<br><br>      Defendant. | Civil Action No. 1:15-cv-01542-CCC |

## REPLY BRIEF IN FURTHER SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendant, Navient Solutions, Inc. ("NSI"), submits this Reply Brief in further support of its Motion for Summary Judgment.

### I.   Introduction

NSI is entitled to summary judgment, and nothing in Plaintiff's Opposition changes that conclusion.  In fact, the Opposition has narrowed and limited the issues before this Court to a single question of law that is ripe for summary judgment.  Initially, Plaintiff contended that NSI lacked consent for any calls it placed to her cellular telephone number ending in 3005 (the "3005 Number"), because she had no existing relationship with NSI.  Plaintiff now concedes that NSI serviced Plaintiff's federal Direct Stafford student loans on behalf of the U.S.

Department of Education.  Plaintiff also contended she had revoked her consent to receive calls, during various calls with employees of NSI.  These allegations have been proven false, and the Opposition makes no attempt to argue otherwise.

Consequently, one single legal issue remains for the Court's determination – whether NSI obtained Plaintiff's express consent for calls it placed to the 3005 Number.  As explained in NSI's motion, Plaintiff provided consent for calls to the 3005 Number, because it is undisputed that she provided that number, without any conditions, to NSI.  Plaintiff's sole argument against NSI's motion is to claim that she provided the 3005 Number to NSI in connection with a different set of loans, and not the loans for which NSI was placing calls.

Plaintiff's argument fails as a matter of law.  Plaintiff's narrow reading of consent under the TCPA defies common sense, and is not supported by either the TCPA itself, statements and orders from the Federal Communications Commission ("FCC"), and case law interpreting "prior express consent" under the TCPA.  In summary, Plaintiff provided the 3005 Number to NSI, with whom she had a business relationship, without any instructions not to call her at that number, or to only call her with respect to a certain loan.  Because Plaintiff provided express consent to NSI for calls to the 3005 Number, NSI is entitled to summary judgment.

II.   **<u>NSI's Response to Plaintiff's Counter Statement of Material Facts.</u>**

1.   Admitted.

2.   Admitted.

3.   Admitted.

4.   Admitted.

5.   Denied as stated.  Plaintiff executed a Federal Direct Stafford Master Promissory Note on January 20, 2014 (the "2014 Master Promissory Note") to enroll in online educational classes at Ashford University (the "Ashford Loans"). (<u>See</u> Stauffer Dep., and 2014 Master Promissory Note attached as Ex. 3 thereto.)

6.   Denied.  Plaintiff provided her 3005 Number without limiting instructions.  Further, Plaintiff's federal student loans are serviced at an account level, and any phone number provided is used as a valid contact number for all loans under that particular account serviced by NSI.  (<u>See</u> 2014 Master Promissory Note; and Dillon Dep., 59:4 – 61:19.)

7.   Denied as stated.  Two of the Ashford Loans were refunded. (<u>See</u> Dillion Dep., 57:18-23.)

8.   Admitted, although Plaintiff's loans are serviced at an account level, and any phone number provided is used as a valid contact number for all loans under that particular account serviced by NSI.  (<u>See</u> Dillon Dep., 59:4 – 61:19.)

9.   Admitted.

10.     Admitted.

11.     Admitted.

12.     Denied.  NSI understood that the language in the 2014 Master

Promissory Note to mean that NSI could call Plaintiff at any future number that

Plaintiff provided in any contest, because there was no limiting language.  (See

Dillon Dep., 74:15 – 75:6.)

**III.     Plaintiff Gave Express Prior Consent to Call Her 3005 Number.**

It is undisputed that Plaintiff executed a Federal Direct Stafford Master

Promissory Note on April 20, 2010 (the "2010 Master Promissory Note") to fund

her education at Everest College (the "Everest Loans").  The 2010 Master

Promissory Note provides:

> H.     I authorize my school, ED, and their respective agents
> and contractors to contact me regarding my loan request or
> my loan, including repayment of my loan, *at the current or
> any future number that I provide for my cellular telephone*
> or other wireless device using automated telephone dialing
> equipment or an artificial or pre-recorded voice or text
> messages.

(NSI's Statement of Facts, ¶¶ 2-3.)  On February 26, 2012, Plaintiff executed an

Unemployment Deferment Request for the Everest Loans.  (Id.)  The 2012

Deferment Request included the following terms:

> I authorize the school, the lender, the guarantor, the
> Department, and their respective agents and contracts to
> contact me regarding my loan(s), including repayment or my
> loan(s), *at the current or any future number that I provide*

# 2953926  v. 1

>       ***for my cellular telephone*** or other wireless device using
>       automated telephone dialing equipment or artificial or pre
>       recorded voice or text messages.

(<u>Id.</u> at ¶ 5.)

Plaintiff also executed a Federal Direct Stafford Master Promissory Note on January 20, 2014 (the "2014 Master Promissory Note") to fund her education at Ashford University (the "Ashford Loans"). There is no dispute that Plaintiff listed the 3005 Number as her "Telephone Number" in the Borrower Information portion of the 2014 Master Promissory Note. (<u>Id.</u> at ¶¶ 7-8.) There is also no dispute that NSI was retained by the U.S. Department of Education to service the Everest Loans and the Ashford Loans. (<u>Id.</u> at ¶¶ 10 - 11.)

These uncontested facts establish that NSI had consent to call Plaintiff's 3005 Number as of January 20, 2014. Plaintiff provided that number in the 2014 Promissory Note. Further, the 2010 Master Promissory Note and 2012 Deferment Request for the Everest Loans contained Plaintiff's explicit authorization that NSI could use ***any future phone number*** that Plaintiff provided. When Plaintiff later provided the 3005 Number in the 2014 Promissory Note, that was "a future number" which NSI could then call with respect to her student loans serviced by NSI (i.e., both the Everest Loans and the Ashford Loans). NSI is therefore entitled to summary judgment.

# 2953926  v. 1

**IV.    The Court Should Reject Plaintiff's Narrow Interpretation of Consent Under the TCPA.**

Plaintiff nonetheless argues that she did not give consent for NSI to call the 3005 Number for the Everest Loans, because the number was provided on her 2014 Master Promissory Note, solely for the Ashford Loans.  The Court should reject this argument.

Nothing in the TCPA itself supports Plaintiff's interpretation.  The TCPA excepts calls made "with the prior express consent of the called party" from liability.  See 47 U.S.C. § 227 (A)(iii).  The statute does not purport to limit "prior express consent" in the manner Plaintiff advocates.

Plaintiff also makes no attempt to distinguish the authority cited in NSI's brief, and Plaintiff has failed to present any applicable rebuttal.  Plaintiff largely relies on a 2008 ruling from the FCC titled In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C. Recd. 559, 564-565, 2008 WL 65485 (Jan. 4. 2008)(the "2008 FCC Ruling"), which included a sentence stating that "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt."  Here, Plaintiff did provide the 3005 Number to U.S. Department of Education, a creditor, and NSI, said creditor's agent or contractor.  Plaintiff also provided that number in connection with a transaction that resulted in a debt.

Regardless, nothing in the 2008 FCC Ruling addressed the specific issue in this case, and no statement therein would prohibit a creditor from calling a customer's cell phone on one loan where she provided that phone number with respect to another loan owned or serviced by the same creditor.  To the contrary, the 2008 FCC Ruling was not intended to limit "prior express consent" to situations where a debtor provided her cellphone number to a creditor in connection with a debt.  Rather, the 2008 FCC Ruling was a result of credit and collection companies seeking clarification of a prior ruling in In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C.R. 14014, ¶ 165 (2003)(the "2003 FCC Order"). The 2003 FCC Order held that it is unlawful to make *any call* with an automatic telephone dialing system to any wireless number, and found that a predictive dialer falls within the meaning of automatic telephone dialing equipment.  Id.  ¶ 7 (emphasis added).  Therefore, in 2005, a petition was filed seeking clarification that the prohibition against auto dialed or pre recorded call to wireless telephone numbers does not apply to the creditor and collectors when calling wireless telephone numbers to recover payments for goods or services received by consumers.  Id.  ¶ 8.  A majority of the comments were by creditors and collectors.  Id.  Thus, as was reiterated in Baird v. Sabre Inc., the sweeping language in the 2003 FCC Order that it was unlawful to make *any call*, in combination with other statements about the nuisance created by

automated calls and the fact that cellphone users are charged for incoming calls,

the credit and collection companies were inspired to seek clarification of the 2003

FCC order.  <u>Baird v. Sabre Inc.</u>, 995 F.Supp.2d 1100, 1105 (C.D. Cal. 2014).  Thus

the 2008 FCC Ruling did not override the 1992 FCC Order.  <u>Id</u>.

       Further, Plaintiff ignores all other FCC orders and rulings, which clarify and

further demonstrate that NSI possessed Plaintiff's express consent to call the 3005

number.  For example, in <u>In the Matter of Rules & Regulations Implementing the</u>

<u>Tel. Consumer Prot. Act of 1991</u> (the "1992 FCC Order"), the FCC determined

that "the called party has in essence requested the contact by providing the caller

with their telephone number for use in normal business communications."  7 FCC

Rcd. 8752, 8769 ¶ 31 (1992).  The 1992 FCC Order further states that "persons

who knowingly release their phone numbers have in effect given their invitation or

permission to be called at the number which they have given, absent any

instructions to the contrary."  <u>Id.</u>  The FCC relied in part on a House of

Representatives report on the TCPA, finding that when people provide their

telephone numbers, "the called party has in essence requested the contact by

providing the caller with their telephone number for use in normal business

communications." <u>Id.</u> ¶ 31 n. 57.

That is precisely the situation here.  Plaintiff provided NSI with the 3005 Number in normal business communications, by including it on a subsequent Promissory Note as her telephone number, and a good number to reach her.

Plaintiff fails entirely to address the 1992 FCC Order, or the decisions in Baird, 995 F.Supp.2d at 1106, Pinkard v. Wal–Mart, No. 3:12–cv–02902–CLS, 2012 WL 5511039, at *2 (N.D. Ala. Nov. 9, 2012), and Murphy v. DCI Biologicals Orlando, LLC, No. 6:12–cv–1459–Orl–36KRS, 2013 WL 6865772 (M.D. Fla. Dec. 31, 2013).  These cases – which all post-date the 2008 FCC Ruling which is the only basis for Plaintiff's argument – consistently refer to the 1992 FCC Order, and reiterate that express consent exists when an individual voluntarily provides her telephone number to the calling party.  See, e.g. Pinkard, at *4; Baird, 995 F.Supp.2d at 1102–03 ("Myriad federal district courts have relied on the 1992 FCC Order ruling to conclude that plaintiffs who provided a business with their telephone number and then received a text message from the business had no claim under the act.") (collecting cases).  These courts correctly concluded that the TCPA does **not** require that a call be made for the exact purpose for which the number was provided, and that a customer who provides a cell number to another party consents to receive calls or texts from that party, regardless of the context in which the number was given.

# 2953926  v. 1

Plaintiff also ignores the rulings in <u>Lawrence v. Bayview Loan Servicing</u>, 152 F. Supp. 3d 1376 (S.D. Fla. 2016), <u>Johnson v. Credit Prot. Ass'n, L.P.</u>, No. 11–80604–CIV, 2012 WL 5875605, at *4 (S.D.Fla. Nov. 20, 2012), and <u>Roberts v. Paypal, Inc.</u>, 621 Fed.Appx. 478, 479 (9th Cir. 2015).  These courts concluded that when a called party provides a cell phone number, without limiting instructions, the called party gave express consent for calls to that number.

Plaintiff also ignores the FCC's Declaratory Ruling and Order dated June 18, 2015, in <u>In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, 30 FCC Rcd. 7961 (2015) (the "2015 FCC Order").  In the 2015 FCC Order, the FCC yet again confirmed the standard set forth in its 1992 Order: "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." <u>Id.</u> at 8028 (Paragraph 141).

Plaintiff relies on <u>Nigro v. Mercantile Adjustment Bureau, LLC</u>, 769 F.3d 804 (2d Cir. 2014), but the facts in that case are clearly distinguishable.  In <u>Nigro</u>, the plaintiff called an electric company to stop service to his mother after she passed away.  The mother was a customer of the electric company, not the plaintiff.  The electric company asked the plaintiff for a phone number, and he provided his cell phone number.  Because a balance remained on the mother's account, the account went to collections, and a debt collector began calling the

# 2953926  v. 1

plaintiff's cell phone.  He then filed a TCPA lawsuit, and the collector argued that

he provided consent by giving his cell phone number to the electric company.  The

Second Circuit determined that the plaintiff did not provide consent, because he

did not provide the number in connection with a debt transaction.  Instead, he

provided the number long after the debt was incurred by his mother, and he was

not even aware of the debt.  Therefore, the plaintiff was not a customer at all.

The facts in this case are very different than in <u>Nigro</u>.  Plaintiff admits that

she is an NSI customer, that NSI serviced her federal student loans, and that she

gave the 3005 Number to NSI as part of a promissory note.  This is not a case

involving a non-customer who was called in connection with an historic debt owed

by another.  Nothing in <u>Nigro</u> supports Plaintiff's interpretation of consent, or

provides a reason to deny NSI's summary judgment motion.[1]

In short, Plaintiff admits she took out both the Everest Loans and the

Ashford Loans, and that Navient was servicing both Loans on behalf of the U.S.

Department of Education.  (<u>See</u> Plaintiff's Response to Statement of Material

Facts, ¶¶ 10-11.)  Therefore, Plaintiff had a servicing relationship with NSI, and

---

[1] Plaintiff also relies on <u>Hartley-Culp v. Credit Mgmt. Co.</u>, No. 3:cv-14-0282, 2014 WL 4630852 (M.D. PA. Sept. 15, 2014), but that decision has no relevance here.  In that case, the Court denied a motion to bifurcate discovery or stay proceedings.  The decision did not address the situation present in this case in any respect. Plaintiff also relies on <u>Wattie-Bey v. Stephen & Michaels Associates, Inc.</u>, No. 1:13-CV-00396, 2014 WL 123597, at *3 (M.D. Pa. Jan. 14, 2014), which is also not on point.  In that case, the Court denied the plaintiff's motion for summary judgment due to myriad fact issues, stating that "Without more evidence concerning the alleged debt, the dates of the phone calls, and whether Plaintiff's telephone number was associated with any other accounts, the Court finds that Plaintiff is not entitled to summary judgment on his TCPA claim."  <u>Id.</u> at * 3.  Here, there are no fact issues, but rather a legal question on the validity of consent.

Plaintiff provided her 3005 Number in connection with that relationship. By knowingly releasing the 3005 Number to NSI, she provided express consent for NSI to place calls to that number. Accordingly, the Court should grant NSI's Motion for Summary Judgment, and dismiss Plaintiff's claims with prejudice.

## V.   **Plaintiff Has Abandoned Any Claim of Revocation of Consent.**

Finally, the undisputed facts show that Plaintiff never revoked consent for calls to the 3005 Number. Plaintiff now admits that NSI made no calls to Plaintiff in January 2015, that she did not revoke consent for calls to her 3005 number, and that Plaintiff's own phone records show no calls with NSI in January 2015. (See Plaintiff's Response to Statement of Material Facts, ¶¶ 18 and 23.) Plaintiff also now admits that NSI had no reason to call Plaintiff in January 2015 because the account was in good standing and not in active repayment at that time. Further, Plaintiff's loans were in an in-school deferment status until December 15, 2014, and when the in-school deferment period ended, Plaintiff was not required to make a payment until February 7, 2015. (Id., ¶ 24.) Plaintiff also admits that only two of the 81 calls made by NSI to the 3005 Number were answered by Plaintiff: (1) one on February 14, 2014, when Plaintiff requested a deferment; and (2) the final call made on May 26, 2015, when Plaintiff stated that NSI was calling a wrong number. (Id., ¶ 26.) Additionally, Plaintiff further admits that in the two calls in which there was a discussion, Plaintiff made no statements that she no longer

# 2953926  v. 1

wished to receive calls to her 3005 Number.  (Id., ¶ 28.)  Lastly, Plaintiff admits

that she did not orally revoke consent for calls to the 3005 Number after her

deferment period ended.  (Id., ¶ 31.)

Simply put, Plaintiff has failed to meet her burden to come forward with any

evidence of revocation.  See Saulsberry v. Meridian Financial Services, Inc., 2016

WL 3456939 (D.C. California April 14, 2016) (dismissing plaintiff's TCPA claims

where plaintiff had no evidence of revocation).

## VI.   **CONCLUSION**

For all the foregoing reasons, and those set forth in its opening brief, the

Court should grant Navient Solutions, Inc.'s Motion for Summary Judgment, and

dismiss Plaintiff's claims with prejudice.

                                   Respectfully submitted,


Dated: September  2, 2016          /s/ Michelle H. Badolato
                                   _____
                                   Eric M. Hurwitz, Esquire
                                   Michelle H. Badolato, Esquire
                                   Stradley Ronon Stevens & Young, LLP
                                   2005 Market Street, Suite 2600
                                   Philadelphia, PA 19103
                                   Phone:  (215) 564-8000
                                   Facsimile:  (215) 564-8120

                                   *Attorneys for Defendant,*
                                   *Navient Solutions, Inc.*

## CERTIFICATE OF SERVICE

I, Michelle H. Badolato, hereby certify that on September 2, 2016, a true and correct copy of the foregoing was served by e-mail and first class mail to the following counsel of record:

Craig Thor Kimmel, Esquire
Joseph C.  Hoeffel, Esquire
Kimmel & Silverman, PC
30 East Butler Pike
Ambler, PA 19002
kimmel@creditlaw.com
*Attorneys for Plaintiff,*
*Crystal Stauffer*

/s/ *Michelle H. Badolato*
Michelle H. Badolato

# 2953926  v. 1