**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CRYSTAL STAUFFER,** | : | **CIVIL ACTION NO. 1:15-CV-1542** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **NAVIENT SOLUTIONS, LLC,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Plaintiff Crystal Stauffer ("Stauffer") commenced the instant action against defendant Navient Solutions, LLC ("Navient"),[1] under the Telephone Consumer Protection Act, 47 U.S.C. § 227.  Stauffer contends that Navient initiated several calls to her personal cellular telephone in violation of the Act.  (Doc. 1).  Before the court is Navient's motion (Doc. 33) for summary judgment pursuant to Federal Rule of Civil Procedure 56.  The court will grant the motion.

---

[1] By notice filed February 16, 2017, the defendant advised the court of a change in its corporate name from "Navient Solutions, Inc." to "Navient Solutions, LLC."  (Doc. 41).

## I.    __Factual Background & Procedural History__[2]

On April 20, 2010, Stauffer applied for federal student loans to cover the cost

of her education at Everest College.  (Doc. 33-1 ¶ 1; Doc. 36 ¶ 1).  Stauffer executed a

master promissory note to obtain the loans.  (Doc. 33-1 ¶ 2; Doc. 36 ¶ 2).  Therein,

she authorized the school, the Department of Education ("Department"), or their

respective agents to contact her regarding the loans "at the current or any future

number that [she] provide[s] for [her] cellular telephone or other wireless device

using automated telephone dialing equipment . . . ."  (Doc. 33-1 ¶ 3; Doc. 36 ¶ 3).

Stauffer provided a telephone number ending in "5039."  (Doc. 33-2 at 15).

Stauffer executed an unemployment deferment request on February 26,

2012.  (Doc. 33-1 ¶ 4; Doc. 36 ¶ 4).  In connection with her request, Stauffer again

authorized the Department, her school, her lender, and any guarantor to contact

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to
Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise
statement of the material facts, in numbered paragraphs, as to which the moving
party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1.
A party opposing a motion for summary judgment must file a separate statement
of material facts, responding to the numbered paragraphs set forth in the moving
party's statement and identifying genuine issues to be tried.  Id.  Consistent with
Federal Rule of Civil Procedure 56(e), the local rule allows a court to deem the
moving party's statement to be admitted when it is not properly "controverted by
the statement required to be served by the opposing party."  Id.; see, e.g., Kuhn v.
Capitol Pavilion, No. 1:11-CV-2017, 2012 WL 5197551, at *9 (M.D. Pa. Oct. 19, 2012)
(Rambo, J.); Thomas v. United States, 558 F. Supp. 2d 553, 558-59 (M.D. Pa. 2008)
(Conner, J.).  Stauffer filed an enumerated response to Navient's statement, (see
Doc. 36), but she fails to "include reference to the parts of the record that support"
her denials of Navient's factual statements.  LOCAL RULE OF COURT 56.1.  Stauffer
further runs afoul of Local Rule 56.1 by including a separate "counterstatement" of
facts.  (See Doc. 36 at 4-5).  Neither Federal Rule 56 nor Local Rule 56.1 authorize
this filing, and Stauffer did not request leave of court therefor.  Notwithstanding
these deficiencies, the court has thoroughly reviewed the parties' statements and
has independently considered the entire record.

her about the loans.  (Doc. 33-1 ¶ 5; Doc. 36 ¶ 5).  Like the 2010 note, the deferment request granted those parties permission to contact Stauffer at the telephone number listed on the request and "any future number" that she provides.  (Doc. 33-1 ¶ 5; Doc. 36 ¶ 5).  Stauffer provided a telephone number ending in "1687" in connection with her request.  (Doc. 33-2 at 24).

Stauffer thereafter sought additional federal student loans to enroll in courses at Ashford University.  (Doc. 33-1 ¶ 6; Doc. 36 ¶ 6).  Stauffer executed a second master promissory note on January 10, 2014 to obtain the new loans.  (See Doc. 33-1 ¶ 7; Doc. 36 ¶ 7).  Stauffer listed a third telephone number ending in "3005" in the 2014 note.  (Doc. 33-1 ¶ 8; Doc. 36 ¶ 8).  The 2014 note granted permission to the school, the Department, and their "agents and contractors" to contact Stauffer concerning her loans at the 3005 number or "any future number" she supplies.  (Doc. 33-1 ¶ 9; Doc. 36 ¶ 9).

Navient has serviced both of Stauffer's federal student loans pursuant to a contract with the Department of Education since May 2013.  (Doc. 33-1 ¶ 11; Doc. 36 ¶ 11).  Navient services loans at the account level rather than by individual loan.  (See Doc. 33-1 ¶ 12; Doc. 36 ¶ 12).  It uses any telephone number provided by the debtor as a contact number for all loans on the debtor's account. (Doc. 33-1 ¶ 12; see Doc. 36 ¶ 12).

Navient first called the 3005 number on February 14, 2014.  (Doc. 33-1 ¶ 19; Doc. 36 ¶ 19).  During this call, Stauffer requested a student loan deferment.  (Doc. 33-1 ¶ 26; Doc. 36 ¶ 26).  Thereafter, Navient did not call the 3005 number again for more than one year.  (See Doc. 33-1 ¶ 20; Doc. 36 ¶ 20).  Beginning in February 2015,

Navient attempted to contact Stauffer concerning past-due payments for the 2010 Everest loans. (Doc. 33-1 ¶ 25; Doc. 36 ¶ 25). Between February 19, 2015 and May 26, 2015, Navient called the 3005 number 81 times. (Doc. 33-1 ¶ 22; Doc. 36 ¶ 22). Stauffer answered only one of the 81 calls: on May 26, 2015, she spoke with a Navient representative and advised that Navient had dialed an incorrect number. (Doc. 33-1 ¶ 26; Doc. 36 ¶ 26). Stauffer did not tell Navient to stop calling the 3005 number.[3] (Doc. 33 ¶¶ 28-32; Doc. 36 ¶¶ 28-32). Nonetheless, Navient did not call the 3005 number after May 26, 2015. (See Doc. 33-2 at 68-70).

Stauffer commenced the instant action with the filing of a complaint (Doc. 1) on August 7, 2015. She filed an amended complaint (Doc. 31) on May 27, 2016. Therein, Stauffer asserts a single statutory claim, to wit: that Navient knowingly violated the Telephone Consumer Protection Act. (Id. ¶¶ 26-33). Stauffer contends that she did not consent to calls at the 3005 number concerning the loans issued in 2010. (See id.) Navient filed the pending motion for summary judgment on July 29, 2016. (Doc. 33). The motion is fully briefed and ripe for disposition.

---

[3] In her amended complaint, Stauffer alleges that she spoke to a Navient representative in January 2015 and revoked consent for future calls to her wireless number. (Doc. 31 ¶¶ 20-21). Stauffer now concedes that she never revoked consent to call the 3005 number. (See Doc. 33-1 ¶¶ 17-18, 31-32; Doc. 36 ¶¶ 17-18, 31-32). Nor does she defend her revocation claim in response to Navient's Rule 56 papers. The court deems Stauffer's revocation argument to be withdrawn. See Brice v. City of York, 528 F. Supp. 2d 504, 516 n.19 (M.D. Pa. 2007) (citing D'Angio v. Borough of Nescopeck, 34 F. Supp. 2d 256, 265 (M. D. Pa. 1999)); Brown v. Pa. State Dep't of Health, 514 F. Supp. 2d 675, 678 n.7 (M.D. Pa. 2007) (same).

II.   **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.   FED. R. CIV. P. 56(a).   The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.   Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).   This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986).   Only if this threshold is met may the cause of action proceed.   See Pappas, 331 F. Supp. 2d at 315.

III.   **Discussion**

Congress enacted the Telephone Consumer Protection Act in 1991 with the principal purpose of protecting consumers from "intrusive and unwanted calls." Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 268 (3d Cir. 2013) (citing Mims v. Arrow Fins. Servs., LLC, 565 U.S. 368, 372-73 (2012)).   Through the Act, Congress sought to harmonize individual privacy rights with the freedom of commercial speech. See Telephone Consumer Protection Act, Pub. L. No. 102-243, § 2(9), 105 Stat. 2394 (1991) (codified as amended at 47 U.S.C. § 227); see Leyse v. Bank of Am. Nat. Ass'n, 804 F.3d 316, 326 (3d Cir. 2015).

The Act proscribes four principal practices.   See 47 U.S.C. § 227(b)(1). Pertinent *sub judice*, the Act forbids placement of "any call (other than a call made

for emergency purposes or made with the prior express consent of the called party)

using any automatic telephone dialing system . . . to any telephone number assigned

to a . . . cellular telephone service." Id. § 227(b)(1)(A)(iii).  The Act does not define

"prior express consent."  See id.  However, Congress has empowered the Federal

Communications Commission ("FCC" or "commission") to implement and enforce

the Act, Gager, 727 F.3d at 268-69 (citing 47 U.S.C. § 227(b)(2)), and the FCC has

propounded extensive guidance on the subject.  District courts are bound by the

FCC's interpretive guidance.  See Hartley Culp v. Green Tree Servicing, LLC, 52 F.

Supp. 3d 700, 703 (M.D. Pa. 2014); see also Mais v. Gulf Coast Collection Bureau,

Inc., 768 F.3d 1110, 1119-21 (11th Cir. 2014).

The FCC first explored prior express consent in a 1992 rulemaking.  See

In the Matter of Rules and Regulations Implementing the Telephone Consumer

Protection Act of 1991, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("1992 Ruling").  The FCC

resolves therein that a business may lawfully place autodialed calls to "persons who

knowingly release their phone numbers" thereto.  Id. at 8769.  The commission

holds that such persons have invited calls to the number given "absent instructions

to the contrary."  Id.  The FCC highlights the Act's legislative history, which notes

that "in such instances, 'the called party has in essence requested the contact by

providing the caller with their telephone number for use in normal business

communications.'"  Id. (quoting H.R. Rep. 102-317, at 13 (1991)).  The 1992 Ruling

distinguishes permissible contacts (made to a number "knowingly released") from

the impermissible, providing as an example the "capturing" of a telephone number

from caller ID.  Id.  The commission reasons that, in the latter circumstance, "the

caller cannot be considered to have given an invitation or permission" to be called.

Id.

 The FCC operated under the 1992 Ruling for more than ten years until the commission's next substantial rulemaking in 2003. <u>See</u> In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014 (July 3, 2003) ("2003 Ruling"). The cardinal purpose of the 2003 Ruling is to establish, in connection with the Federal Trade Commission, a national do-not-call registry. <u>Id.</u> at 14017. The bulk of the ruling is inapposite *sub judice*, but one key observation is relevant: in response to comments concerning the existence, nature, and frequency of telemarketing calls to wireless consumers in particular, the commission "affirm[s] that under the [Act], it is unlawful to make *any call* using an automatic telephone dialing system . . . to any wireless telephone number." <u>Id.</u> at 14114-15.

 Thereafter, ACA International, an international credit and collections trade organization, sought elucidation of the 2003 Ruling. Specifically, ACA International requested clarification that the prohibition on "any call" to a wireless telephone number does not apply to "creditors and collectors . . . calling wireless telephone numbers to recover payments for goods and services received by consumers." <u>See</u> In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559, 563 (Jan. 4, 2008) ("2008 Ruling"). In a 2008 Ruling, the FCC confirmed that the Act does indeed permit such calls. <u>Id.</u> at 564-55.

 The commission's 2008 Ruling emphasizes that, although the Act generally prohibits autodialed calls to wireless telephones, calls made to a wireless number

"provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party." Id. at 559, 564. The FCC again channels legislative intent, concluding that Congress did not mean to circumscribe "normal business communications" made to numbers provided by the party called. Id. (quoting H.R. Rep. 102-317, at 17). Reiterating the "knowing[] release" principles of its 1992 Ruling, the commission observes that "provision of a cell phone number to a creditor . . . reasonably evidences prior express consent" to be contacted at that number anent the debt. Id. (quoting 1992 Ruling, 7 FCC Rcd. at 8769). The FCC emphasizes that consent will be "deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." Id. at 564-65. In closing, the commission places the burden on the creditor to prove prior express consent. Id. at 565.[4]

We examine the Rule 56 record through the prism of these interpretive rulings. Viewed in the light most favorable to Stauffer, the undisputed evidence establishes that Stauffer provided three separate telephone numbers to her creditor (the Department of Education) on three occasions. In her 2010 federal student loan

---

[4] In two subsequent rulings, the FCC confirmed that Congress did not intend the Act to limit "normal business communications." See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961, 8002 (July 10, 2015) (exploring the phrase "called party"); In the Matter of GroupMe, Inc./Skype Communications S.A.R.L. Petition for Expedited Declaratory Ruling, 29 FCC Rcd. 3442, 3444-45 (Mar. 27, 2014) (exploring intermediary consent in informational text message context). The rulings reaffirm congressional intent generally, but neither speaks in detail to consent in the debt collection context. Thus, we acknowledge the rulings as tangential support for our analysis but do not visit them in depth herein.

application, Stauffer supplied a "5039" number, authorizing the Department and its agents to contact her at that number or "any future number that [she] provide[s]." (Doc. 33-1 ¶ 3; Doc. 33-2 at 15; Doc. 36 ¶ 3).  In a 2012 deferment request, she gave a "1687" number and again authorized the Department and its agents to contact her at that number "or any future number."  (Doc. 33-1 ¶ 5; Doc. 33-2 at 24; Doc. 36 ¶ 5).  And in a second application for federal student loans in 2014, Stauffer provided a "3005" number and reiterated that the Department and its agents may call her at that number or any number subsequently provided.  (Doc. 33-1 ¶¶ 8-9; Doc. 36 ¶¶ 8-9).  Stauffer does not dispute that Navient is the Department's agent for purposes of servicing her student loans.  (Doc. 33-1 ¶¶ 10-12; Doc. 36 ¶¶ 10-12).

Our resulting inquiry is narrow.  We must determine whether Navient, a federal student loan servicer, may contact a debtor concerning one set of student loans at a telephone number provided to it in connection with a second and later-issued set of loans.  This question is one of first impression in the Third Circuit Court of Appeals, but we are not without guidance in our analysis.  FCC rulings summarized *infra*, together with persuasive decisional law and legislative intent, all inform the court's ultimate judgment.

Stauffer suggests that our inquiry begins and ends with the 2008 Ruling. According to Stauffer, consent attaches not to the creditor-debtor relationship but to the individual transaction.  (See Doc. 37 at 3-5).  Stauffer relies exclusively on the FCC's statement that consent is granted only when a wireless number is provided to the creditor "during the transaction that resulted in the debt owed."  (Id. (quoting 2008 Ruling, 23 FCC Rcd. at 564-65)).  She asseverates that the 2010 and 2014 loans

"were two separate transactions, regarding two separate schools." (Id. at 5).  It follows, according to Stauffer, that the Department and its loan servicer could not contact her at the 3005 number concerning the 2010 loans because that number was not provided during the 2010 transaction.  (Id.)

As a threshold matter, we reject Stauffer's attempt to cast the 2010 and 2014 loan applications as independent transactions.  (See Doc. 37 at 5).  Stauffer stresses that the loans concern "two separate schools" and were executed "four years apart."  (Id.)  But the loans are serviced in *the same account* for *the same creditor* (the Department of Education) and *the same debtor* (Stauffer).  (Doc. 33-1 ¶¶ 11-12; Doc. 36 ¶¶ 11-12; see also Doc. 33-2 at 15, 26).  That the loans were disbursed to two separate schools is of no moment.  According to Stauffer, however, the nature of this established creditor-debtor relationship cannot transcend the transactional limitation on consent ostensibly established by the 2008 Ruling.

To adopt Stauffer's limiting construction of the 2008 Ruling would be to reject nearly twenty-five years of FCC guidance.  The 1992 Ruling explicitly defines consent as the "knowing[] release" of a telephone number by a consumer for use in "normal business communications."  1992 Ruling, 7 FCC Rcd. at 8769.  The FCC made clear that the *manner* in which the business obtains a telephone number *matters*: calls to numbers "knowingly released" are permissible; calls to numbers otherwise obtained are not.  See id.  Thus, the central question has always been whether the caller can be considered to have given an invitation to or permission for the call.  See id.  The 2008 Ruling does not profess to overturn or modify this standard.  *Per contra*, the FCC doubles down on the 1992 Ruling, reiterating its

"knowing[] release" rule and reciting the legislative support for same.  See 2008 Ruling, 23 FCC Rcd. at 564 (quoting 1992 Ruling, 23 FCC Rcd. at 8769, H.R. Rep. 102-317, at 17)).

Stauffer's interpretation of the 2008 Ruling also divorces it from context.  The 2008 Ruling issued in response to a petition seeking confirmation that the FCC did not intend its 2003 Ruling to proscribe ordinary creditor-debtor communications. See 2008 Ruling, 23 FCC Rcd. at 563.  The FCC confirmed that the 2003 Ruling *did not* so limit contact between creditors and debtors: "In this ruling, we clarify that autodialed . . . calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party."  Id. at 559, 564.  The 2008 Ruling was not intended to obstruct established creditor-debtor relationships.  Instead, the ruling affirms the unremarkable principle that a creditor may call a debtor at a wireless number provided by the debtor in the course of their business relationship.  See id.; see also 1992 Ruling, 7 FCC Rcd. at 8769.

Read together, the 1992 and 2008 Rulings establish that context controls when measuring consumer consent.  That is, the manner in which a number is obtained—within or beyond the scope of the creditor-debtor relationship—is key. The Sixth Circuit Court of Appeals described the impact of the 2008 Ruling on the commission's established consent principles thusly: "[The] language [of the ruling] does not change the general definition of express consent; it instead emphasizes that creditors can call debtors only to recover payment for obligations owed, *not on any topic whatsoever*."  Hill v. Homeward Residential, Inc., 799 F.3d 544, 551-52 (6th

Cir. 2015) (emphasis added) (citations and internal quotation marks omitted).  In other words, debtors who knowingly provide a telephone number in connection with the creditor-debtor relationship have consented to be called.  See id. at 552.

Courts regularly reject debtors' attempts to wield the 2008 Ruling as a shield from calls otherwise consented to.[5]  Indeed, one district court jettisoned the very argument advanced by Stauffer *sub judice*.  See Jones v. Stellar Recovery, Inc., No. 14-CV-21056, 2015 WL 2088793 (S.D. Fla. Feb. 20, 2015).  The plaintiff in Jones opened an account with Comcast in 2012 and provided a wireless telephone number and consent to call concerning that account.  Id. at *1.  After moving in 2013, Jones closed the first account and opened a second account that later became delinquent.  Id.  Comcast called Jones to discuss the second account's delinquency at the number given for the *first* account, and Jones filed suit under the Telephone Consumer Protection Act.  Id.  Like Stauffer, Jones argued that use of definite articles in the 2008 Ruling—"during *the* transaction that resulted in *the* debt"— means that consent given in connection with the first account is limited to that account alone.  See id. at *3.

---

[5] For example, courts have held that the FCC's reference to consent "provided *by the consumer to the creditor*" does not restrict a creditor from later turning a telephone number over to a debt collector for debt-related calls.  See Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110, 1122-23 (11th Cir. 2014); Daubert v. NRA Group, LLC, 189 F. Supp. 3d 442, 464-65 (M.D. Pa. 2016) (citations omitted); Hartley-Culp v. Green Tree Servicing, LLC, 52 F. Supp. 3d 700, 702-03 (M.D. Pa. 2014) (same).  Nor does the ruling limit consent to that given at the time a debt originates.  As the Sixth Circuit has observed: "While debtors may 'typically' give their cellphone number 'as part of a credit application' at the beginning of the debtor-creditor relationship, it doesn't *have* to be that way."  Hill, 799 F.3d at 552 (citing Mais, 768 F.3d at 1122).

The Jones court disagreed, resolving that the 2008 Ruling simply did not contemplate the unique facts before the court, "where a plaintiff gave his number when opening one account with a creditor, but then received debt-collection calls regarding a second account *with the same creditor*." Id. (emphasis added).  Indeed, the 2008 Ruling's rationale undergirds the court's ruling.  In particular, the Jones court was persuaded by the FCC's reiteration that express consent exists when debtors knowingly provide wireless telephone numbers to creditors for purposes of "normal business communications." Id. at *3-4.  The court concluded that "normal business communications" would "logically include" calls from Comcast concerning either of Jones' accounts. Id. at *4.  Accordingly, the court found that Jones had expressly consented to debt-related contact from Comcast. Id. at *4-5.

The *ratio decidendi* of the Jones decision aligns with our analysis herein.  Consistent with FCC rulings, we hold that a debtor consents to debt-related calls from her creditor when she "knowingly releases" her wireless number thereto.  See 2008 Ruling at 564; 1992 Ruling at 8769.  We thus consider whether Stauffer knowingly released the  3005 number to Navient and assented to debt-related communications therefrom.

The Rule 56 record answers this inquiry in the affirmative.  When Stauffer executed the 2010 promissory note, she knowingly released her then-current telephone number to the Department and its agents and authorized them to call her at "any future number" that she may provide to them.  (Doc. 33-1 ¶ 3; Doc. 33-2 at 15; Doc. 36 ¶ 3).  Stauffer then provided a future number to the Department—the

3005 number—and consented to calls at that number concerning her student loan

debt.  (Doc. 33-1 ¶¶ 8-9; Doc. 36 ¶¶ 8-9).  The record on this point is unequivocal:

Stauffer invited the Department—and Navient as its agent—to contact her at the

3005 number in connection with her student loan debt and their "normal business"

relationship.  No reasonable juror could determine otherwise.  Hence, Navient is

entitled to summary judgment on Stauffer's Telephone Consumer Protection Act

claim.[6]

## IV.   Conclusion

The court will grant Navient's motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        March 13, 2017

---

[6] We would be remiss not to acknowledge the Bipartisan Budget Act of 2015, which carved an exception to the prior express consent requirement for "call[s] . . . made solely to collect a debt owed to or guaranteed by the United States."  Pub. L. No. 114-74, § 301(a), 129 Stat. 584 (2015) (codified at 47 U.S.C. § 227(b)(1)((A)(iii)). The amendment became effective November 2, 2015, id., after the calls at issue herein.  (See Doc. 33-1 ¶¶ 19-22; Doc. 36 ¶¶ 19-22).  In a subsequent ruling, the FCC limited the number of permissible calls under this exemption to "no more than three within a thirty-day period."  In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 31 FCC Rcd. 9074, 9075, 9089 (Aug. 2, 2016).  At least one court has held that the 2015 amendment applies retroactively to insulate federal student loan-related calls made before the amendment's effective date.  See Silver v. Pa. Higher Educ. Assistance Agency, No. 14-CV-652, 2016 WL 1258629, at *2-4 (N.D. Cal. Mar. 31, 2016).  Because we find that Stauffer expressly consented to calls concerning her federal student loan debt, we need not explore retroactivity of the 2015 Amendment.